STATE OF NORTH CAROLINA v. FORREST ALLEN SMITH

No. 8813SC505

(Filed 30 December 1988)

**Criminal Law § 138.29— felonious assault—aggravating circumstance of premeditation and deliberation—separate evidence required to prove intent to kill**

In a prosecution of defendant for felonious assault with a deadly weapon with intent to kill inflicting serious injury, evidence that defendant acquired personal information about his victim, adopted an alias, contacted him to schedule a meeting about his girlfriend in order to observe what the victim looked like, waited for him to return home from work several weeks later, spoke the victim's name when he passed by, and then fired four shots at him as he tried to escape was sufficient for the trial court to find premeditation and deliberation as a nonstatutory aggravating factor; furthermore, there was no merit to defendant's contention that the evidence necessary to prove that he acted with intent to kill was also necessary to prove premeditation and deliberation, and this was not permitted pursuant to N.C.G.S. § 15A-1340.4(a), since proof of premeditation and deliberation required presenting additional evidence beyond mere intent to kill.

APPEAL by defendant from *Barefoot, Napoleon B., Judge.* Judgment entered 9 December 1987 in COLUMBUS County Superior Court. Heard in the Court of Appeals 29 November 1988.

Defendant was found guilty of felonious assault with a deadly weapon with intent to kill inflicting serious injury. Following the sentencing hearing the trial court found as a statutory aggravating factor that the offense involved damage causing great monetary loss. It further found, as nonstatutory aggravating factors, that defendant fired three more shots than necessary to sustain the conviction, and that the serious physical injury suffered by the victim was greater than that normally present for the crime. It found as statutory mitigating factors that defendant had no prior record of criminal convictions, had been honorably discharged from the United States armed services, and that he had been a person of good character or had a good reputation in the community in which he lived. It found as nonstatutory mitigating factors that defendant expressed genuine remorse to the victim, his voluntary meeting with the victim and explanation of the circumstances surrounding the crime, and that he acted under the influence of great mental and emotional distress at the time of the crime. The trial court concluded that the factors in aggrava-

tion outweighed those in mitigation and sentenced the defendant to a term of eighteen years.

In an unpublished opinion this Court remanded the case for a new sentencing hearing, holding that the statutory aggravating factor of great monetary loss applied only to property damage and not to personal injury, and that the nonstatutory aggravating factor of serious injury was an element of the offense for which defendant was convicted.

Following the second sentencing hearing the trial court found as a nonstatutory aggravating factor that the "acts or the act of the defendant was done with premeditation and deliberation ·. . . ." Finding that the factor in aggravation outweighed those in mitigation, it sentenced defendant to a term of eighteen years.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Sueanna P. Peeler, for the State.*

*Appellate Defender Malcolm Ray Hunter, by Assistant Appellate Defender M. Patricia DeVine, for defendant-appellant.*

WELLS, Judge.

The evidence presented at trial tended to show that defendant and a female co-worker, Mrs. Deborah Keel, were involved in a close personal friendship for about one year. Mrs. Keel testified that she ended the relationship during the summer of 1985, for although it had never developed into an extramarital affair, she felt uncomfortable maintaining it. Defendant became very upset and followed Mrs. Keel at least twice.

In mid-September a good friend of Mr. and Mrs. Keel, Kevin Maurer, received a telephone call from a man who identified himself as Tony Hill and asked Maurer to meet him at a local restaurant to discuss a woman whom Maurer was dating. Maurer agreed to the meeting but upon arriving at the restaurant found no one there. He returned home and soon received another telephone call from Hill, who asked whether he had gone to the restaurant, and explained his own absence as stemming from fear of something happening· to him.

Mrs. Keel testified that she had spoken frequently of Mr. Maurer at work, as he was a close family friend, and that she

kept an address book which contained his name and address on her desk. She remembered mentioning to the defendant that Maurer had a girlfriend and telling him her name.

Mr. Maurer, a twenty-seven-year-old financial analyst, returned home from work on 8 October 1987 at around 10:30 p.m. He walked past a beige Datsun parked in the parking lot of his apartment complex, and then turned around when he heard someone call his name. Standing next to the opened car door, pointing a gun at him, was a man whom he had never seen before but whom he positively identified in court as the defendant, Forrest Smith. Defendant identified himself as Tony Hill and ordered Maurer into the car. Maurer ran approximately 100 to 125 yards toward a friend's apartment, expecting the door to be unlocked as it usually was, but upon reaching it discovered that it was locked. He called for help but then remembered feeling a flashing blue light inside his head, and awakened three days later. Maurer received gunshot wounds in his shoulder and upper spine, the latter which severed his spinal cord and rendered him permanently paralyzed below the shoulders. A State Highway Patrolman stopped a car matching the description of the beige Datsun given by another apartment resident, and an Elizabethtown police officer arrested the driver, whom they identified as defendant Smith.

Defendant contends that the trial court erred in finding as a nonstatutory aggravating factor that the offense was committed with premeditation and deliberation. The maximum imprisonment for felonious assault with a deadly weapon with intent to kill inflicting serious injury is twenty years, N.C. Gen. Stat. § 14-1.1(a)(6) (1986), and the presumptive sentence is six years, N.C. Gen. Stat. § 15A-1340.4(f)(4) (1988).

The sentencing judge "may consider any aggravating and mitigating factors that he finds are proved by the preponderance of the evidence, and that are reasonably related to the purposes of sentencing," whether or not such factors are specifically listed in the fair sentencing statute. N.C. Gen. Stat. § 15A-1340.4(a) (1988). One of the primary purposes of sentencing is "to impose a punishment commensurate with the injury the offense has caused, taking into account factors that may diminish or increase the offender's culpability. . . ." N.C. Gen. Stat. § 15A-1340.3 (1988).

In evaluating the proper use of nonstatutory factors to aggravate a sentence the North Carolina Supreme Court has inquired whether the factor "makes the defendant more blameworthy than he or she already is as a result of committing a violent crime against another person." *State v. Hines*, 314 N.C. 522, 335 S.E. 2d 6 (1985). If the factor does not have this effect, it is not properly used to aggravate the sentence. *Id.; State v. Underwood*, 84 N.C. App. 408, 352 S.E. 2d 898 (1987).

The presence of premeditation and deliberation is important in elevating culpability for violent crimes. Although prior to 1893 no distinction was made between types of murder in North Carolina, for example, modern statutes recognize the higher degree of culpability society assigns to crimes committed with premeditation and deliberation and divide homicide into degrees. *State v. Benton*, 276 N.C. 641, 174 S.E. 2d 793 (1970). These factors are recognized as elevating a defendant's level of culpability because our society views as more culpable a violent offense perpetrated with careful planning and in a cool state of blood than one committed with malice but without premeditation and deliberation. *State v. Smith*, 221 N.C. 278, 20 S.E. 2d 313 (1942).

The evidence presented in the case at bar tended to show that defendant acquired personal information about his victim, adopted an alias, and contacted him to schedule a meeting about his girlfriend in order to observe what the victim looked like. Several weeks later on the night of the offense, defendant awaited the victim's return home, spoke his name when the latter passed by, and then fired four shots at him as he tried to escape. The circumstances of this felonious assault, from which the trial court could properly find premeditation and deliberation by a preponderance of the evidence, tended to show a higher degree of culpability than other assault cases in which only the assaultive conduct itself is pertinent to the degree of culpability of the defendant.

Prior decisions have accepted the nonstatutory factors that a violent offense was premeditated and deliberated, *see State v. Melton*, 307 N.C. 370, 298 S.E. 2d 673 (1983) (second degree murder), and that it was planned, *see State v. Chatman*, 308 N.C. 169, 301 S.E. 2d 71 (1983) (first degree burglary), as reasonably related to the purposes of sentencing. Because these factors increase the

defendant's culpability and make him or her more blameworthy, they are properly considered aggravating if supported by adequate evidence.

Defendant contends that the evidence necessary to prove that he acted with intent to kill was also necessary to prove premeditation and deliberation. "Evidence necessary to prove an element of the offense may not be used to prove any factor in aggravation. . . ." N.C. Gen. Stat. § 15A-1340.4(a) (1988). Premeditation means that the defendant formed the intent to kill during some period of time before actually committing the crime; deliberation means that the defendant was in a cool state of blood when he formed the intent to kill. *State v. Misenheimer*, 304 N.C. 108, 282 S.E. 2d 791 (1981). Thus, proof of each factor requires presenting additional evidence beyond mere intent to kill; premeditation requires proof of the *time* when the intent to kill was formed, and deliberation requires proof of the defendant's *emotional state* when he formed this intent. In the case at bar there was ample evidence, apart from that presented to prove intent to kill, to support the trial court's finding that defendant acted with premeditation and deliberation.

Affirmed.

Judges ARNOLD and COZORT concur.