IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-1249

 Filed: 7 August 2018

McDowell County, 15 CRS 625, 15 CRS 51084

STATE OF NORTH CAROLINA

 v.

JEFFERY DANIEL WAYCASTER

 Appeal by defendant from judgments entered 16 May 2017 by Judge Gary M.

Gavenus in McDowell County Superior Court. Heard in the Court of Appeals

5 June 2018.

 Attorney General Joshua H. Stein, by Assistant Attorney General Alexander
 Walton, for the State.

 Dylan J.C. Buffum Attorney at Law, PLLC, by Dylan J.C. Buffum for
 defendant-appellant.

 ARROWOOD, Judge.

 Jeffery Daniel Waycaster (“defendant”) appeals from judgments entered on his

convictions of interfering with an electronic monitoring device and attaining the

status of a habitual felon.

 I. Background

 On 26 October 2015, defendant was indicted for interfering with an electronic

monitoring device, and for attaining the status of a habitual felon. The matter came

on for trial in McDowell County Superior Court before Judge Gary M. Gavenus on
 STATE V. WAYCASTER

 Opinion of the Court

15 May 2017. The State’s evidence tended to show that, on 24 September 2015,

defendant was subject to supervised probation due to a conviction for felony larceny

that was entered 22 July 2014. As a modified condition of his probation, defendant

submitted to electronic monitoring.

 Probation Officer Matthew Plaster (“Officer Plaster”) supervised defendant.

Officer Plaster testified that defendant’s electronic monitoring equipment was

installed prior to 24 September 2015 by BI Total Monitoring, the company contracted

to install and monitor the equipment. Officer Plaster described the equipment as

follows. BI Total Monitoring’s electronic monitoring equipment includes an ankle

monitor, a beacon that used a global positioning system (“GPS”) to track the monitor,

and a charger for each probationer. The ankle monitor and beacon “have serial

numbers on them that are specific to” the probationer they monitor. BI Total

Monitoring’s computer software, BI Total Access, keeps logs of which serial numbers

are assigned to each probationer.

 When an ankle monitor is not in the beacon’s range, it transmits a GPS signal.

These signals enable the probation officer to log onto a computer program to see,

“within a fairly accurate distance[,]” where a probationer is located. When a

probationer removes the ankle monitor, BI Total Monitoring notifies the probation

office. Officer Plaster testified that this technology “works really well” and their office

has “not had much issue with dead spots and stuff.” After the equipment’s

 -2-
 STATE V. WAYCASTER

 Opinion of the Court

installation on defendant’s person and at his residence, Officer Plaster inspected it to

ensure “it was on properly.”

 On 24 September 2015, the “on call” probation officer, Probation Officer David

Ashe (“Officer Ashe”), received an alert from BI Total Monitoring that defendant’s

ankle monitor’s strap had been tampered with. Unable to reach defendant by phone,

Officer Ashe used the GPS to locate the monitor miles from defendant’s residence, in

a ditch approximately 8 feet from a road. He testified that he took the ankle monitor

to his office, where he verified it was the one assigned to and installed on defendant.

 Defendant did not present any evidence.

 On 16 May 2017, the jury found defendant guilty of interfering with an

electronic monitoring device.

 On 17 May 2017, the habitual felon phase of the trial began. The indictment

charged defendant with habitual felon status based on three convictions in McDowell

County: a 4 June 2001 conviction for felonious breaking and entering on or about

20 February 2001, a 18 February 2010 conviction for felonious breaking and entering

on or about 29 October 2009, and a 22 July 2014 conviction for safecracking on or

about 27 June 2013. The State offered true copies of judgments related to the

18 February 2010 and 22 July 2014 convictions as evidence.

 As proof of the 4 June 2001 conviction, the State called the Clerk of McDowell

County Superior Court, Melissa Adams, as a witness. She identified a printout of a

 -3-
 STATE V. WAYCASTER

 Opinion of the Court

record entered into the Automated Criminal/Infraction System (“ACIS”) that showed

that, on 4 June 2001, defendant was convicted in McDowell County case 01 CR 1216

of felony breaking and entering for an offense that occurred on 20 February 2001.

Defendant objected to the submission of the ACIS printout, arguing it was not the

best evidence in this case because it was not a copy of the judgment. The trial court

overruled defendant’s objection, explaining: “ACIS is a way in which the State can

introduce true copies of judgments entered in the system, and it’s admissible under

the rules of evidence.”

 The jury found defendant had attained habitual felon status. The trial court

sentenced defendant to an active term of incarceration for 38 to 58 months.

 Defendant appeals.

 II. Discussion

 Defendant makes two arguments on appeal. First, he argues the trial court

committed plain error by admitting hearsay evidence to establish that the ankle

monitor found in the ditch was the monitor assigned to defendant. Second, he argues

the trial court erred when it allowed an ACIS printout into evidence as proof of

defendant’s 2 June 2001 conviction for felony breaking and entering. We address

each argument in turn.

 A. Hearsay Evidence

 -4-
 STATE V. WAYCASTER

 Opinion of the Court

 Defendant argues the trial court plainly erred when it allowed Officer Ashe to

provide testimony based on GPS tracking evidence and simultaneously prepared

reports to establish that the ankle monitor that he found was the same monitor that

had been installed on and assigned to defendant. Defendant contends this testimony

constituted hearsay that was not admissible under any exception. We disagree.

 Officer Ashe testified that the 24 September 2015 alert he received from BI

Total Monitoring identified defendant as the probationer to whom the monitor at

issue was assigned. Defendant objected to this statement as hearsay, but was

overruled. Subsequently, Officer Ashe testified that he verified the monitor was the

one assigned to and installed on defendant. Defendant did not object. Therefore, he

lost the benefit of his initial objection and failed to preserve this issue for appellate

review. See State v. Maccia, 311 N.C. 222, 229, 316 S.E.2d 241, 245 (1984)

(“[W]hen . . . evidence is admitted over objection, and the same evidence has been

previously admitted or is later admitted without objection, the benefit of the objection

is lost.”) (citations omitted). Nonetheless, defendant contends the admission of

Officer Ashe’s testimony based on GPS tracking evidence and simultaneously

prepared reports amounts to plain error.

 Under plain error review, an issue that was not preserved “may be made the

basis of an issue presented on appeal when the judicial action questioned is

specifically and distinctly contended to amount to plain error.” N.C.R. App. P.

 -5-
 STATE V. WAYCASTER

 Opinion of the Court

10(a)(4) (2018). “[P]lain error review . . . is normally limited to instructional and

evidentiary error.” State v. Lawrence, 365 N.C. 506, 516, 723 S.E.2d 326, 333 (2012)

(citation omitted). To show plain error, a “defendant must convince this Court not

only that there was error, but that absent the error, the jury probably would have

reached a different result.” State v. Jordan, 333 N.C. 431, 440, 426 S.E.2d 692, 697

(1993) (citation omitted). Accordingly, the error must have been “so basic, so

prejudicial, so lacking in its elements that justice cannot have been done[.]” State v.

Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation and internal quotation

marks omitted).

 Rule 801 of the North Carolina Rules of Evidence defines hearsay as “a

statement, other than one made by the declarant while testifying at the trial or

hearing, offered in evidence to prove the truth of the matter asserted.” N.C. Gen.

Stat. § 8C-1, Rule 801(c) (2017). Hearsay is generally not admissible at trial, unless

otherwise allowed by statute or the North Carolina Rules of Evidence. N.C. Gen.

Stat. § 8C-1, Rule 802. Rule 803(6) of the North Carolina Rules of Evidence

establishes an exception to the general exclusion of hearsay for business records,

which the rules define as:

 A memorandum, report, record, or data compilation, in any
 form, of acts, events, conditions, opinions, or diagnoses,
 made at or near the time by, or from information
 transmitted by, a person with knowledge, if (i) kept in the
 course of a regularly conducted business activity, and (ii) it
 was the regular practice of that business activity to make

 -6-
 STATE V. WAYCASTER

 Opinion of the Court

 the memorandum, report, record, or data compilation, all
 as shown by the testimony of the custodian or other
 qualified witness, or by affidavit or by document under seal
 under Rule 902 of the Rules of Evidence made by the
 custodian or witness, unless the source of information or
 the method or circumstances of preparation indicate lack
 of trustworthiness. Authentication of evidence by affidavit
 shall be confined to the records of nonparties, and the
 proponent of that evidence shall give advance notice to all
 other parties of intent to offer the evidence with
 authentication by affidavit. The term “business” as used in
 this paragraph includes business, institution, association,
 profession, occupation, and calling of every kind, whether
 or not conducted for profit.

N.C. Gen. Stat. § 8C-1, Rule 803(6). Electronically stored business records are

admissible if:

 (1) the computerized entries were made in the regular
 course of business, (2) at or near the time of the transaction
 involved, and (3) a proper foundation for such evidence is
 laid by testimony of a witness who is familiar with the
 computerized records and the methods under which they
 were made so as to satisfy the court that the methods, the
 sources of information, and the time of preparation render
 such evidence trustworthy.

State v. Jackson, 229 N.C. App. 644, 650, 748 S.E.2d 50, 55 (2013) (quoting State v.

Crawley, 217 N.C. App. 509, 516, 719 S.E.2d 632, 637 (2011)). These records need

not be authenticated by the person who made them. State v. Wilson, 313 N.C. 516,

533, 330 S.E.2d 450, 462 (1985) (citations omitted).

 Our Court has previously held that hearsay statements based on “GPS

tracking evidence and simultaneously prepared reports are admissible under the

 -7-
 STATE V. WAYCASTER

 Opinion of the Court

business records exception to the hearsay rule.” State v. Gardner, 237 N.C. App. 496,

499, 769 S.E.2d 196, 198 (2014) (citation omitted). However, defendant argues that

the testimony at issue does not meet the requirements of the business records

exception because the probation officers that testified did not lay a proper foundation

“to satisfy the court that the methods, the sources of information, and the time of

preparation render such evidence trustworthy” as required under our caselaw. We

disagree.

 In both Gardner and Jackson, we held that the probation officers’ testimony

was sufficient to lay a proper foundation for statements based on GPS tracking

evidence and simultaneously prepared reports. Id. at 501, 769 S.E.2d at 199;

Jackson, 229 N.C. App. at 650-51, 748 S.E.2d at 55-56. Here, as in Gardner, one of

the probation officers that testified, Officer Plaster, testified concerning the operation

of the electronic monitoring device worn by defendant and demonstrated his

familiarity with the system through his testimony. Additionally, he testified that the

information transmitted through the GPS technology is stored in a software database

that the probation office uses to conduct its business. He also testified that the

program is an accurate source of information that “works really well.” We hold that

his testimony established a sufficient foundation of trustworthiness for the tracking

evidence to be admissible as a business record. Therefore, the trial court did not err

when it permitted Officer Ashe to testify that the tracking data in this case verified

 -8-
 STATE V. WAYCASTER

 Opinion of the Court

that the ankle monitor at issue had been assigned to defendant. Because the trial

court did not err, the trial court did not commit plain error.

 B. Evidentiary Requirements Under N.C. Gen. Stat. § 14-7.4

 Defendant argues the trial court erred when it allowed an ACIS printout to be

admitted as proof of a prior conviction to establish defendant’s habitual felon status.

Specifically, he argues the admission of the printout violated the best evidence rule,

which requires secondary evidence offered to prove the contents of a recording be

excluded whenever the original recording is available. See State v. York, 347 N.C. 79,

91, 489 S.E.2d 380, 387 (1997) (citing N.C. Gen. Stat. § 8C-1, Rules 1002-1004 (2017)).

 While this Court has previously concluded, in an unpublished opinion, that

criminal history printouts from the ACIS database were admissible evidence to prove

a prior felony under N.C. Gen. Stat. § 14-7.4, see State v. Aultman, No. COA15-242,

__ N.C. App. __, __, 781 S.E.2d 532, __, 2016 WL 47970 at *6 (N.C. Ct. App. Jan. 5,

2016) (unpublished), it is well settled that “[a]n unpublished opinion establishes no

precedent and is not binding authority[.]” Long v. Harris, 137 N.C. App. 461, 470,

528 S.E.2d 633, 639 (2000) (citation, internal quotation marks, and brackets omitted).

Nonetheless, we agree with the reasoning set out in Aultman and hold that printouts

from the ACIS database were admissible evidence to prove a prior felony under N.C.

Gen. Stat. § 14-7.4, and, thus, were not barred by the best evidence rule, for the

reasons that follow.

 -9-
 STATE V. WAYCASTER

 Opinion of the Court

 Under the Habitual Felon Act (“the Act”), “when a defendant has previously

been convicted of or pled guilty to three non-overlapping felonies,” and commits a new

felony under North Carolina law, the “defendant may be indicted by the State in a

separate bill of indictment for having attained the status of being an habitual felon.”

State v. Wells, 196 N.C. App. 498, 502, 675 S.E.2d 85, 88 (2009) (citation omitted);

N.C. Gen. Stat. § 14-7.1 (2017). “The trial for the substantive felony is held first, and

only after defendant is convicted of the substantive felony is the habitual felon

indictment revealed to and considered by the jury.” State v. Cheek, 339 N.C. 725, 729,

453 S.E.2d 862, 864 (1995) (citing N.C. Gen. Stat. § 14-7.5). “Upon a conviction as an

habitual felon, the court must sentence the defendant for the underlying felony as a

Class C felon.” State v. Penland, 89 N.C. App. 350, 351, 365 S.E.2d 721, 722 (1988)

(citing N.C. Gen. Stat. § 14-7.6) (citation omitted).

 The Act sets out the following evidentiary requirements for proving prior

felonies:

 In all cases where a person is charged . . . with being an
 habitual felon, the record or records of prior convictions of
 felony offenses shall be admissible in evidence, but only for
 the purpose of proving that said person has been convicted
 of former felony offenses. A prior conviction may be proved
 by stipulation of the parties or by the original or a certified
 copy of the court record of the prior conviction.

N.C. Gen. Stat. § 14-7.4. A “certified copy” under N.C. Gen. Stat. § 14-7.4 is “a copy

of a document or record, signed and certified as a true copy by the officer whose

 - 10 -
 STATE V. WAYCASTER

 Opinion of the Court

custody the original is [entrusted].” State v. Gant, 153 N.C. App. 136, 143, 568 S.E.2d

909, 913 (2002) (citing Black’s Law Dictionary 228 (6th ed. 1990)) (emphasis and

alteration omitted). There is no recognizable distinction between certified copies and

true copies. Id. “[A]lthough section 14-7.4 contemplates the most appropriate means

to prove prior convictions for the purpose of establishing habitual felon status, it does

not exclude other methods of proof.” State v. Wall, 141 N.C. App. 529, 533, 539 S.E.2d

692, 695 (2000) (citation omitted).

 Our Supreme Court has explained ACIS is:

 an electronic compilation of all criminal records in North
 Carolina. While the North Carolina Administrative Office
 of the Courts (AOC) administers and maintains ACIS, the
 information contained in ACIS is entered on a continuing,
 real-time basis by the individual Clerks of Superior Court,
 or by an employee in that Clerk’s office, from the physical
 records maintained by that Clerk. Any subsequent
 modifications to that information are under the exclusive
 control of the office of the Clerk that initially entered the
 information, so that personnel in one Clerk’s office cannot
 change records entered into ACIS by personnel in a
 different Clerk’s office. In other words, the information in
 ACIS both duplicates the physical records maintained by
 each Clerk and constitutes the collective compilation of all
 records individually entered by the one hundred Clerks of
 Court.

LexisNexis Risk Data Mgmt. Inc. v. North Carolina Administrative Office of Courts,

368 N.C. 180, 181, 775 S.E.2d 651, 652 (2015). In a case not involving the Habitual

Felon Act, our court held that a “printed-out email, which contains a screenshot of

the AOC record of the conviction, is ‘a copy’ of a ‘record maintained electronically’ by

 - 11 -
 STATE V. WAYCASTER

 Opinion of the Court

the Administrative Office of the Courts, which is sufficient to prove [a] prior

conviction under N.C. Gen. Stat. § 15A-1340.14(f)(3)” to determine prior record level

for sentencing. State v. Best, 202 N.C. App. 753, 757, 690 S.E.2d 58, 61 (2010).

 In the instant case, the ACIS printout was sufficient evidentiary proof of

defendant’s 4 June 2001 conviction under the Habitual Felon Act. ACIS “duplicates

the physical records maintained by each Clerk and constitutes the collective

compilation of all records individually entered by” clerks of court. LexisNexis Risk

Data Mgmt. Inc., 368 N.C. at 181, 775 S.E.2d at 652. The Clerk of McDowell County

Superior Court, the individual tasked with maintaining the physical court records in

McDowell County, testified that the printout was a certified true copy of the

information in ACIS regarding this judgment. She also explained the information

was “the same as the judgment” and affirmed it “is a different way of recording what’s

on a judgment[.]” The Clerk’s certification of the ACIS printout as a true copy of the

original information is significant due to her responsibility and control over the

physical court records, copies, and ACIS entries, as described in LexisNexis Risk Data

Mgmt. Inc.

 The Best Evidence Rule does not bar the admission of this ACIS printout

merely because the original judgment was unaccounted for at trial. The plain reading

of N.C. Gen. Stat. § 14-7.4 and our habitual felon jurisprudence makes clear that the

statute is permissive and does not exclude methods of proof that are not specifically

 - 12 -
 STATE V. WAYCASTER

 Opinion of the Court

delineated in the Act. Wall, 141 N.C. App. at 533, 539 S.E.2d at 695 (citation

omitted). Moreover, the Clerk of McDowell County Superior Court certified the

information as a true copy. The trial court did not err by permitting the State to offer

the ACIS printout as evidence of the 4 June 2001 conviction.

 III. Conclusion

 For the forgoing reasons we hold the trial court did not commit error.

 NO ERROR.

 Judge CALABRIA concurs.

 Judge MURPHY concurs in part and dissents in part in a separate opinion.

 - 13 -
 No. COA17-1249 – State v. Waycaster

 Murphy, Judge, concurring in part and dissenting in part.

 I concur with the Majority opinion as to the conviction of interfering with an

electronic monitoring device, but must respectfully dissent as to the conviction of

habitual felon status. State’s Exhibit 4, the Automated Criminal/Infraction System

(ACIS) printout used to prove one of Defendant’s three convictions, was not

admissible because the State did not sufficiently comply with the foundational

requirements of the best evidence rule.

 Under N.C. Gen. Stat. § 14-7.4, “[a] prior conviction may be proved by

stipulation of the parties or by the original or a certified copy of the court record of

the prior conviction.” N.C. Gen. Stat. § 14-7.4 (2017) (emphasis added). While the

habitual felon statutory language is “permissive,” Wall, 141 N.C. App. at 533, 539

S.E.2d at 695, “[t]he preferred method for proving a prior conviction includes the

introduction of the judgment itself into evidence.” State v. Blakney, 233 N.C. App.

516, 521, 756 S.E.2d 844, 848 (2014) (alteration omitted) (quoting State v. Maynard,

311 N.C. 1, 26, 316 S.E.2d 197, 211 (1984)). Thus, although N.C. Gen. Stat. § 14-7.4

“does not exclude other methods of proof[,]” Wall, 141 N.C. App. at 533, 539 S.E.2d at

695, I dissent because the Majority extends the “permissive” nature of N.C. Gen. Stat.

§ 14-7.4 too far and suspends the applicability of our Supreme Court precedent and

the Rules of Evidence to habitual felon proceedings.

 I note that a printout from the ACIS is neither a “court” nor “judicial” record

of a criminal conviction. Rather, the ACIS “is an electronic compilation of all criminal
 STATE V. WAYCASTER

 MURPHY, J., concurring in part and dissenting in part.

records in North Carolina.” LexisNexis Risk Data Mgmt. Inc., 368 N.C. at 181, 775

S.E.2d at 652. Thus, an ACIS printout is actually a record of the data stored in the

ACIS database at one point in time, not a court record. See id. Our Supreme Court

has held that “[t]he proceedings of courts of record can be proved by their records

only[.]” Jones v. Jones, 241 N.C. 291, 293, 85 S.E.2d 156, 158 (1954) (“Public policy

and convenience require the rule, and a necessary consequence from it is the absolute

and undeniable presumption that the record speaks the truth.”). This historic

mandate is consistent with the modern statutory language of N.C. Gen. Stat. § 14-

7.4, which provides that “[a] prior conviction may be proved by the original or a

certified copy of the court record of the prior conviction.” Therefore, this precedent

has not been superseded by statute and is still applicable in the instant case. Our

precedent prefers that the proceedings of Courts, such as a criminal conviction, be

proved by “their records.” Notwithstanding this critical distinction between a

judgment record and an ACIS printout, I agree that an ACIS printout may serve as

secondary evidence of a defendant’s record of conviction, provided that the

requirements of the best evidence rule are satisfied. Here, they were not.

 Wall, a case principally relied upon by the Majority, is distinguishable from

the instant case. In Wall, we determined whether “a faxed certified copy of a criminal

record is admissible under section 14-7.4 to prove defendant’s status as an habitual

felon.” Wall, 141 N.C. App. at 532, 539 S.E.2d at 694 (emphasis added). There,

 2
 STATE V. WAYCASTER

 MURPHY, J., concurring in part and dissenting in part.

although the State did not submit the original or a certified copy of the court record

of the defendant’s prior felony conviction, the State still proved his conviction with a

“court record.” Id. at 530, 539 S.E.2d at 693. It was with a faxed version of the

certified copy of the judgment and commitment form, not an ACIS printout. Id.

Wall’s holding, confined to its facts, is fairly simple: a facsimile of a certified copy of

a defendant’s judgment and commitment form is permitted under N.C. Gen. Stat. §

14-7.4. Id. at 533, 539 S.E.2d at 695. This distinction between Wall and the instant

case further confirms that despite N.C. Gen. Stat. § 14-7.4’s permissive nature, the

State must either proffer a “court record” or otherwise comply with the best evidence

rule.

 Further, although bound by Wall, I dissent in part to recognize that we

provided an incomplete and truncated interpretation of N.C. Gen. Stat. § 14-7.4 in

that case. Id. at 531-32, 539 S.E.2d at 694. Specifically, Wall’s interpretation of N.C.

Gen. Stat. § 14-7.4 omits critical words of the statute, and as a result ignores

legislative intent. Id. Wall stated that:

 The statute at issue in the instant case, section 14-7.4,
 clearly indicates that the provision is permissive, not
 mandatory, in that it provides a prior conviction “may” be
 proven by stipulation or a certified copy of a record.

Id. at 533, 539 S.E.2d at 695 (emphasis added). However, the plain language of N.C.

Gen. Stat. § 14-7.4 does not provide that a prior conviction may be proven by any

“copy of a record,” as the above language from Wall suggests. Id. Rather, N.C. Gen.

 3
 STATE V. WAYCASTER

 MURPHY, J., concurring in part and dissenting in part.

Stat. § 14-7.4 expressly states that a copy of “the court record” of the prior conviction

may be used:

 A prior conviction may be proved by . . . the original or a
 certified copy of the court record of the prior conviction.

N.C. Gen. Stat. § 14-7.4 (emphasis added). A “certified copy of the court record” is not

synonymous with a “certified copy of a record.” Compare id. with Wall, 141 N.C. App.

at 533, 539 S.E.2d at 695.

 State v. Aultman, an unpublished decision of this Court, whose reasoning is

adopted by the Majority today, relied on Wall’s truncated interpretation of N.C. Gen.

Stat. § 14-7.4. See Aultman, 2016 WL 47970 at *5 (unpublished) (citing Wall, 141

N.C. App. at 531-32, 539 S.E.2d at 694). Unlike the Majority and the unpublished

opinion in Aultman, I would limit the holding of Wall to its facts, and would decline

to extend its reasoning to permit the introduction of ACIS printouts as secondary

evidence of a criminal defendant’s judgment record without first complying with the

foundational requirements of the best evidence rule. Wall, 141 N.C. App. at 533, 539

S.E.2d at 695 (holding that a faxed copy of a certified copy of the actual judgment can

be admitted to prove a prior conviction in a habitual felon proceeding).

 I note that at trial, Defendant argued that the ACIS printout should have been

barred by the best evidence rule. Defendant also advances this argument on appeal.

However, in neither Wall nor Aultman did the defendant make any argument

concerning the best evidence rule. Wall, 141 N.C. App. 529, 539 S.E.2d 692; Aultman,

 4
 STATE V. WAYCASTER

 MURPHY, J., concurring in part and dissenting in part.

2016 WL 47970. Thus, neither of these cases should be deemed controlling in our

resolution of the present case.

 The best evidence rule applies here because the ACIS printout was admitted

to prove the contents of a judicial record (i.e. a “writing”) that the State indicated was

unavailable. In response to Defendant’s objection, the State admitted that they had

originally intended to use Defendant’s judgment and commitment record to prove his

conviction, but were using the ACIS printout (submitted as State’s Exhibit 4) because

the original could not be found.

 The State: I’ll tell you Your Honor that when we were
 gathering these documents, 4A had come from
 microfilming and they said that they didn’t have the
 original of 4. So 4 is the record of the original judgment.

However, this explanation by the State fails to lay the proper foundation necessary

to admit secondary evidence of public records under North Carolina Rule of Evidence

1005. I again emphasize that an ACIS printout is not a court record of the original

judgment, but is only secondary evidence thereof. LexisNexis Risk Data Mgmt. Inc.,

368 N.C. at 181, 775 S.E.2d at 652. The information contained in the ACIS database

is entirely dependent upon the contents of a physical court record, a signed judgment

and commitment form. Id. (“[T]he information contained in ACIS is entered on a

continuing, real-time basis by the individual Clerks of Superior Court, or by an

employee in that Clerk's office, from the physical records maintained by that Clerk.”).

 5
 STATE V. WAYCASTER

 MURPHY, J., concurring in part and dissenting in part.

 As Defendant’s 4 June 2001 judgment record is a “public record,” the

admissibility of an ACIS printout as secondary evidence of it is governed by Rule

1005. Thus, to properly admit the ACIS printout, the State was required to establish

that a copy of the 4 June 2001 judgment record could not be “obtained by the exercise

of reasonable diligence.” N.C. Gen. Stat. § 8C-1, Rule 1005 (“If a copy which complies

with the foregoing cannot be obtained by the exercise of reasonable diligence, then

other evidence of the contents may be given.” (emphasis added)).

 Here, there was an inadequate foundation regarding the State’s exercise of

“reasonable diligence” to obtain a copy of the 4 June 2001 judgment record. Id. The

only statement made by the State regarding the unavailability of Defendant’s

judgment record is simply that “they didn’t have the original[.]” As to the degree of

diligence required under Rule 1005, reasonable diligence “is not easy to define, as

each case depends much on its peculiar circumstances[.]” Avery v. Stewart, 134 N.C.

287, 290, 46 S.E. 519, 520 (1904). However, reasonable diligence is not an

insurmountable standard, even in this context where the State has the burden to

prove a defendant guilty beyond a reasonable doubt:

 What degree of diligence in the search is necessary it is not
 easy to define, as each case depends much on its peculiar
 circumstances; and the question whether the loss of the
 instrument is sufficiently proved to admit secondary
 evidence of its contents is to be determined by the Court
 and not by the jury. But it seems that in general the party
 is expected to show that he has in good faith exhausted, in
 a reasonable degree, all the sources of information and

 6
 STATE V. WAYCASTER

 MURPHY, J., concurring in part and dissenting in part.

 means of discovery which the nature of the case would
 naturally suggest and which were accessible to him. . . .
 [T]he burden of showing the loss of a written instrument is
 upon the party seeking to introduce secondary evidence.
 He must establish its loss by proof that he has made
 diligent but unavailing search for the paper in places
 where it would be most likely to be found, and the degree
 of diligence necessary to be shown must depend upon the
 value and importance of the lost document.

Id. (internal quotation marks and citations omitted).

 The prosecutor’s statement that “they said that they didn’t have the original”

is not competent evidence of reasonable diligence under Rule 1005. I recognize that

the admissibility of secondary evidence of a public record under Rule 1005 is a

preliminary question, and the trial court, in making its determination on the question

of admissibility, is not bound by the Rules of Evidence. N.C. Gen. Stat. § 8C-1, Rule

104(a). However, our precedent does not treat the statements of counsel to be

“evidence.” State v. Crouch, 74 N.C. App. 565, 567, 328 S.E.2d 833, 835 (1985) (“Our

review of representative cases discloses no circumstances where statements of

counsel have been treated as evidence[.]”). In Crouch, we recognized that the Rules

of Evidence do not apply at probation revocation hearings yet still concluded that the

defendant was required to present “competent evidence” of his inability to comply

with the terms of his probation to meet his burden. Id. at 567, 328 S.E.2d at 835. We

held that statements from the defendant’s counsel were not competent evidence. Id.

Similarly, in the instant case, although Rule 104 allowed for a relaxation of the Rules

 7
 STATE V. WAYCASTER

 MURPHY, J., concurring in part and dissenting in part.

of Evidence in determining the preliminary matter of diligence, the State was still

required to present evidence. The prosecutor’s statement that “they didn’t have the

original” is not evidence.

 Assuming arguendo that the statements of counsel are competent evidence for

a Rule 1005 foundation, the statement “they said that they didn’t have the original”

fails to evince a reasonably diligent search. We are unable to discern who they are,

where they looked for Defendant’s judgment record, and why they did not have an

original or a copy of the record. Thus, we have no way of discerning whether a good

faith search has been made in a place where the judgment record was most likely to

be found. Even in our unpublished and nonbinding decision in Aultman, the ACIS

report was only admitted after the Assistant Clerk of Court for the criminal division

of Duplin County testified that the ACIS reports were “the only records that would

be left of the district court files.”1 Aultman, 2016 WL 47970 at *3. Here there was

no such testimony, and although the Clerk of McDowell Superior Court testified at

Defendant’s habitual felon trial, she only testified as to what an ACIS printout was

generally and to the meaning of the abbreviations in the ACIS report fields.

 1 I note that the foundation laid by the Duplin County Clerk in Aultman further indicated that
the ACIS printout was the only remaining evidence of the defendant’s conviction. Specifically, ACIS
printouts contain a data field labeled “FILM” and this field denotes whether a particular conviction
record has been archived via microfilming. In Aultman, the “FILM” field in the ACIS printout
indicated that the District Court’s judgment record was never microfilmed. In contrast, here the
“FILM” field in Defendant’s ACIS printout contains a corresponding microfilm number, confirming
that his original 4 June 2001 judgment record has been archived via microfilming. As a result, the
State needed to do more to lay a foundation of a reasonably diligent search for this record.

 8
 STATE V. WAYCASTER

 MURPHY, J., concurring in part and dissenting in part.

 By ignoring the applicability of the best evidence rule, the Majority implicitly

endorses a subminimal foundation standard that impedes our ability to conduct

effective and efficient appellate review. Moreover, the Majority’s opinion is a

departure from our precedent because it suggests that the evidence necessary to

establish a Rule 1005 “reasonable diligence” foundation can come solely from the

statements of counsel who seek to admit evidence of the contents of a public record

against the other party. Our precedent dictates that ACIS printouts should be used

out of necessity, not choice. See Wall, 141 N.C. App. 531, 539 S.E.2d 693 (facsimile

of judgment); State v. Ross, 207 N.C. App. 379, 400, 700 S.E.2d 412, 426 (2010)

(“Although other documents, such as a transcript of plea, could be used to prove a

conviction, we agree that, as our Supreme Court stated, the ‘preferred method for

proving a prior conviction includes the introduction of the judgment itself into

evidence.’” (quoting Maynard, 311 N.C. at 26, 316 S.E.2d at 211)). The Rules of

Evidence and in turn, the best evidence rule apply during the habitual felon

enhancement stage of a trial. As the State failed to present competent evidence

necessary to establish a foundation demonstrating that a reasonably diligent search

was conducted to locate Defendant’s 4 June 2001 judgment record, I must respectfully

dissent.

 9